NORTHERN ASSURANCE CO., LTD., OF LONDON *v.*
MELINSKY.

1. INSURANCE—ARBITRATION—APPRAISAL OF LOSS.
    Appraisement affords a speedy and inexpensive method of
    settling a dispute between insured and insurer as to the
    amount of the loss or damage.

2. SAME—APPRAISERS SHOULD BE FAIR AND INTELLIGENT.
    Persons appointed as appraisers should be fair, impartial,
    and disinterested, having knowledge of the property to
    be appraised, and with intelligence to ascertain its value
    after inspection and inquiry on the subject.

3. SAME — APPRAISER NOT INELIGIBLE BECAUSE HE HAD ACTED
    PREVIOUSLY.
    That insurer's appraiser had acted before as an appraiser
    for it and other companies at the request of its adjuster,
    did not render him ineligible to act.

4. SAME — PREVIOUS RELATIONS OF APPRAISERS AND PRINCIPALS
    SHOULD BE CONSIDERED.
    The business relations of the parties with their ap-
    praisers, while it would not render them ineligible, should
    be considered in determining the weight to be given to
    their testimony.

5. SAME — NOTICE OF APPRAISERS' MEETING — PREPONDERANCE OF
    PROOF.
    Insurer's claim that its appraiser had not been notified of
    the meeting at which the award fixing the amount of in-
    sured's loss was made, *held*, not sustained by a preponder-
    ance of proof.

6. SAME—SETTING ASIDE APPRAISERS' AWARD.
    In a suit by insurer to set aside an award to insured by
    appraisers, the decree of the court below dismissing plain-
    tiff's bill, *held*, justified by the record.

Appeal from Wayne; Shepherd (Frank), J., presid-

¹Fire Insurance, 26 C. J. § 538; ²Appraisal, 4 C. J. p. 1408;
Fire Insurance, 26 C. J. § 549; ³Fire Insurance, 26 C. J. § 549;
⁴Id., 26 C. J. § 549 (Anno); Witnesses, 40 Cyc. p. 2657 (Anno);
⁵Fire Insurance, 26 C. J. § 558 (Anno); ⁶Id. 26 C. J. § 580 (Anno).

ing.  Submitted January 27, 1927.  (Docket No. 20.)
Decided April 1, 1927.

Bill by the Northern Assurance Company, Limited,
of London against Jay Melinsky and Jacob Berger, co-
partners as the General Wiping Cloth Company, and
another to set aside an award of insurance appraisers,
and to enjoin an action at law.  From a decree dis-
missing the bill, plaintiff appeals.  Affirmed.

*Walters & Hicks* (*Walters, Hicks, Carmichael &
Head,* of counsel), for plaintiff.

*Friedman, Meyers & Keys,* for defendants.

SHARPE, C. J.  On March 6, 1924, defendants' stock
of merchandise, insured in the plaintiff company in
the sum of $10,000, was considerably damaged by fire,
smoke and water.  Each of the parties secured the
services of an adjuster.  They were unable to agree
on the amount of the loss, and, pursuant to the terms
of the policy, appraisal was sought.  Plaintiff ap-
pointed David J. Osgood, and the defendants Peter J.
Trunsky, as their respective appraisers, and they
agreed upon Joseph LaMeasure as umpire, to whom,
however, only differences were to be submitted.  The
appraisers could not agree, and the umpire was called
in.  He joined with defendants' appraiser in signing
an award fixing the loss and damage at $5,718.44.  On
plaintiff's refusal to pay this award, the defendants
brought an action in the Wayne circuit court for its
recovery, whereupon plaintiff filed the bill of com-
plaint herein, praying that the award "may be declared
invalid, set aside and held for naught."  On its filing
a bond, it secured a temporary injunction, restraining
the prosecution of the action at law pending decree.
Plaintiff appeals from a decree dismissing its bill.

The plaintiff claims that the award is invalid be-
cause its appraiser was not present at the meeting of

the other two when it was made, nor had he been notified of such meeting. Of the latter fact the testimony is in dispute. It is undisputed, however, that the three appraisers made an examination of the stock of merchandise after the fire, and conferred together about the amount which should be awarded. They had been furnished with a carefully prepared inventory of the stock, from which it appeared that its sound value was $11,436.88. Mr. LaMeasure testified:

"Mr. Osgood wanted to allow $1,500, and Mr. Trunsky was strong for $9,500; and I said, 'We'll cut the price, or the value in two; that won't any more than compensate them for their loss.' Then when Mr. Osgood came out and scolded me and upbraided me, I told him I would do the very same thing again, and I wouldn't change my decision—not a bit; I thought it was no more than fair that these gentlemen should get that amount."

While this is denied by Mr. Osgood, we think it is fairly established by the proof. Osgood suggested that the goods should be reconditioned, the expense to be borne by the plaintiff. The defendants protested against their plant being tied up for this work, and there is proof that Osgood said he would get men and have it done at once, but no definite arrangement was made to do so. It is difficult to fix the date of this meeting. Trunsky testified that about a week later he called Osgood on the telephone, and told him that he and LaMeasure had agreed on the "50 per cent. loss," and asked what he wanted to do, and "he says he wanted another day or two; so we made an appointment for the following Saturday afternoon at 2 o'clock;" that at that time he had not heard from Osgood; tried to get him on the telephone, but could not, and he and LaMeasure signed the award. Osgood testified that LaMeasure told him he had tried to get him on the telephone, and Hoit, one of plaintiff's ad-

justers, testified: "I know one or two meetings were unattended. I know because Mr. Osgood said he had an appointment to meet him." Soon after the award was signed, defendants sent a copy of it and proofs of loss to the plaintiff at its Chicago office. Several weeks later they received a letter from plaintiff's adjuster in Detroit, returning the papers sent, in which it was said:

"The said papers are not acceptable to the said Northern Assurance Co., Ltd., of England, for the reason that there has not been a legal appraisal, and the alleged award, a copy of which accompanied the said proofs, was erroneously executed under a misapprehension of facts with regard to coverage by the umpire chosen to act in this case."

The trial court was of the opinion that the award should not be disturbed for the reason stated. Plaintiff thereafter, and before decree, moved for a rehearing, and submitted a letter written by its appraiser to its adjuster in Detroit after the award was made, in which he stated that he had had no notice of such meeting. It seems clear that this letter would not have been admissible in evidence. In deciding this motion, the court expressed doubt as to his former holding on the question of notice, but, in view of the letter above quoted from, containing no statement that Osgood had not been notified of the meeting, he denied the motion for rehearing, and signed a decree dismissing the bill.

Appraisement affords a speedy and inexpensive method of settling a dispute between the parties as to the amount of the loss or damage. *Jacobs* v. *Schmidt*, 231 Mich. 200. In that case the duty devolving on those selected to act as appraisers was pointed out and the rights of the parties to the proceeding clearly defined. The statement in 4 C. J. p. 1408, that the persons appointed should be—

"fair, impartial, and disinterested, having knowledge of the property to be appraised, and with intelligence to ascertain its value after inspection and inquiry on the subject"

—was quoted with approval. The persons selected to act should be indifferent between the parties. They should be in no sense the agents or representatives of the parties selecting them. Mr. Osgood was a building contractor, and in cases where an appraisal required an estimate of the damage to a building occasioned by a fire his judgment would be entitled to great weight. He testified that he had acted as an appraiser in many cases, in "something over a hundred the past month. * * * That would be about six or seven thousand appraisals during the last ten years." That he acted for either side, and many times for both sides. That "they don't need to arbitrate when I make the figures." He admitted that he was not competent to place a value on the damaged goods, and said that he expected to have experts to aid him in doing so. Defendants' appraiser and the umpire had at least some knowledge of the amount of the loss occasioned by the fire. No duty devolved on Osgood to take steps looking to the reconditioning of the damaged goods. If he believed it necessary to have this done in order that he might form a fair estimate of the damage, he should have communicated that fact to the plaintiff and awaited such action as it desired to take. It is apparent that in the performance of his duty as an appraiser he was not content to exercise his judgment, based upon the appearance of the damaged goods and such other facts as might be presented to the appraisers, but considered it his duty to see to it that certain things were done which would aid him in arriving at a judgment as to the loss occasioned by the fire. The position thus taken by him led to delay. The umpire, after such an examination as he

.made, advised the other appraisers that in his opinion 50 per cent. of the sound value would fairly represent such loss. Defendants' appraiser finally agreed to this. They were able to form a judgment as to the loss from an examination of the inventory and the condition of the damaged goods, based on their familiarity with the business conducted by defendants.

The fact that Osgood had acted as an appraiser for plaintiff and other companies at the request of plaintiff's adjuster did not render him ineligible to act. 14 R. C. L. p. 1359. It appears that defendants' appraiser had theretofore had business relations with them. These facts may be considered in determining the weight to be given to their testimony. In deciding whether Osgood had notice of the meeting at which the appraisal was signed, we can but apply the rule of preponderance of proof. A consideration of all of the facts disclosed by the record, and the inferences which may fairly be drawn therefrom, leads us to the conclusion that the finding of the trial court should not be disturbed.

The decree dismissing the bill is affirmed, with costs to appellees.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.